Filed May 29, 1894.

———————◆———————

No. 16,742.

## FLORA *v.* RUSSELL ET AL.

MALICIOUS PROSECUTION.—*Suspicion or Belief of Guilt.*—*Probable Cause.*—Mere suspicion, or even belief, that a person has committed a crime, based upon circumstances in themselves innocent, is not, in an action for malicious prosecution, sufficient to show probable cause.

SAME.—*Advice of Prosecuting Attorney.*—*When it will Protect.*—The procuring of a warrant, upon the advice of the prosecuting attorney, will not protect against an action for malicious prosecution, unless the facts within the knowledge of the prosecuting witness are fully and fairly stated to such attorney.

SAME.—*Railroad Company.*—*Liability for Acts of Employes.*—A railroad

company is liable, in an action for malicious prosecution, for the acts of its employes within the scope of their employment and in the interest of the company.

SAME.—*Scope of Employment.*—*Acts Without.*—A check clerk at a railroad station, working under the local freight agent, is not, without more shown, acting within the scope of his employment when he procures a search warrant to discover property stolen from the railroad company.

From the Knox Circuit Court.

*W. A. Cullop, C. B. Kessinger* and *J. S. Pritchett,* for appellant.

*W. M. Ramsey, L. Maxwell, Jr., R. Ramsey* and *E. Barton,* for appellees.

HOWARD, J.—The appellees had caused a search warrant to be issued, under authority of which the home of appellant was entered and searched for a butt of tobacco, claimed by appellees to have been stolen by appellant from a car of the appellee, the Ohio and Mississippi Railway Company. No such tobacco was found in or about the residence of appellant.

This action was then instituted by the appellant. The complaint was in three paragraphs, the first counting upon malicious prosecution; the second, upon libel; and the third, upon trespass. A demurrer was overruled to the first paragraph of the complaint, but sustained as to the second and the third, which latter rulings are assigned as error. The demand in each paragraph was for five thousand dollars. The jurisdiction is in this court. Elliott's App. Proced., section 59; *Flora* v. *Russell,* 31 N. E. Rep. 936.

General denials being then filed to the first paragraph of the complaint, the cause was submitted to a jury. The evidence for the plaintiff having been given, appellees demurred to the evidence, whereupon the jury returned a conditional verdict of damages in

the sum of five hundred dollars for appellant; and the demurrer to the evidence was taken under advisement by the court. Afterward the court sustained the demurrer to the evidence, set aside the verdict of the jury and rendered judgment in favor of the appellees.

Many questions are discussed by counsel, but we are of opinion that all questions so discussed are merged in the consideration of the court's ruling on the demurrer to the evidence. From the evidence, it appears that H. A. Truedly was at the time freight agent of the appellee railroad company, at Vincennes, and had been so acting for over two years.

The appellee Russell was an employe of the company, being check clerk, and working under Truedly. He had been so employed for two years, and had been an employe of the company for sixteen years. William H. DeWolf was the local attorney of the company, and had been for ten or fifteen years.

On the morning of February 24, 1890, Truedly learned from Russell, and from another employe named Drulinger, that a car had been broken into and a butt of tobacco taken. One Metzger, a city policeman, had told Russell that he suspected a man named Flora. Metzger added that Flora's house had been lit up during the night, and there was knocking around, and he had watched the place a while, and he advised Russell to go and get out a search warrant. Drulinger told Russell the same thing. Russell got all the bills and checked the freight in the car, and found a box of tobacco short, and Drulinger then resealed the car. On this information Truedly gave Russell a note stating the case, to take to DeWolf, the attorney, and to see him about the matter, telling Russell at the same time that he suspected Flora. DeWolf wrote a letter and gave it to Russell to take to

the prosecuting attorney.    Russell gave DeWolf's letter
to the prosecuting attorney, and also told the prosecuting
attorney that tobacco had been stolen from the O. and
M. the night before; that he was one of the employes of
the company, and had been looking the matter up, and
thought he knew who the parties were; that he had in-
formation from the police, mentioning Metzger, that
Flora had lights in his house during the night, and there
was noise as if they were putting up boxes; and that the
police believed the tobacco was in the house.  The prose-
cuting attorney also read the letter from the company's
attorney, and told Russell if these facts were true, if
Metzger was right, it was a clear case, and advised that
a search warrant be issued.    They then went before the
mayor where the following affidavit was sworn to by
Russell:

"George Russell swears that on or about the 23d day
of February, 1890, at said county, one ――――― Flora,
whose Christian name is unknown to this affiant, did
then and there unlawfully and feloniously steal, take
and carry away one butt of tobacco, of the value of ten
dollars, of the personal goods and property of the Ohio
and Mississippi Railway Company, as affiant verily be-
lieves, and this affidavit is made to obtain a search war-
rant, and not from anger or malice."

Upon this affidavit, a search warrant was placed in
the hands of two officers, who made thorough search of
the house of appellant, including cellar and other rooms,
stable, trunks, bed, bureau drawers, etc.  The appellee
was absent at work when the search was made.

The following return was made to the warrant: "Come
to hand February 24, 1890.   In obedience to this writ,
I, the undersigned city marshal, with the assistance of
William Hall, went and searched the said premises of

Flora, and found no goods of the description mentioned in affidavit. This 24th day of February, 1890.

"LOUIS HAHN, City Marshal."

The evidence showed that there was sickness in the family of the appellee, for which reason there had been light in the house, and the parents were up taking care of their children during the night. The good character of the appellee was proved by many witnesses.

In *Carey* v. *Sheets*, 67 Ind. 375, it was said, quoting from Wharton's Criminal Law, section 2942, that one who maliciously and without probable cause procures a search warrant to be issued, will be liable as for a malicious prosecution.

In the same case, it is said that express malice need not be shown; but that malice may be inferred from the want of probable cause. Citing 4 Wait Actions and Defenses, 345, 346; 2 Greenleaf Ev., section 453; *Oliver* v. *Pate*, 43 Ind. 132; *Lockenour* v. *Sides*, 57 Ind. 360. See, also, *Bitting* v. *Ten Eyck*, 82 Ind. 421; *Pennsylvania Co.* v. *Weddle*, 100 Ind. 138; *Heap* v. *Parrish*, 104 Ind. 36.

Going back to the evidence which might show probable cause, we notice that Truedly, the agent of the appellee company, received his information from the appellee Russell and the watchman, Drulinger, both employes of the company. Russell obtained his information from Metzger, a city policeman, a relative of Russell's. Metzger said "he had suspicions of one Flora." It was Metzger who told him, also, that Flora's house had been lit up, and that there were noises about it the night before, and that he had watched the place. Drulinger told Russell the same that Metzger told him. Flora lived several squares away from the depot. Russell's knowledge that a butt of tobacco was stolen was derived from a checking off of the bills of freight that should be in the car, when he found the tobacco short.

This was the information communicated to the agent, Truedly, and on the basis of which the prosecution was instituted.

The evidence shows no reason why Truedly or Russell suspected Flora. The watchmen who saw the light in the house and heard the noise there do not say how it was they connected Flora with the taking of the tobacco. The evidence discloses no probability whatever as to Flora's taking any tobacco. That there was light in his house and some noise there is all that seems to have drawn suspicion to him more than to any other inhabitant of the town.

It is said, however, that the prosecuting attorney advised the issue of the warrant, and that this is sufficient to show the absence of malice and want of probable cause.

In *Lytton* v. *Baird,* 95 Ind. 349, it was said that "The mere fact that a party procures and acts upon the advice of an attorney so obtained, does not of itself exempt him from liability, or afford absolute justification of the prosecution. * * * It is merely competent evidence tending to rebut malice and the want of probable cause. *Smith* v. *Zent,* 59 Ind. 362; *McCarthy* v. *Kitchen,* 59 Ind. 500. In *Scotten* v. *Longfellow,* 40 Ind. 30, it was held that such advice, to afford any protection, must be given upon a full and true statement of all the facts within the knowledge of the person seeking the advice."

The appellee, Russell, says that he told everything that he knew to the prosecuting attorney, and that in making the affidavit he acted upon that official's advice. But the evidence of the prosecuting attorney shows that his evidence was based upon a much broader state of facts than, as we have seen, Russell himself was in possession of. Russell's evidence shows that he knew nothing but what was told him by Metzger and Drulinger,

which was that they suspected Flora; that they saw light and heard noise in Flora's house the night before. But the prosecuting attorney, in his testimony, says that Russell told him ''that he was in the employ of the company, and had been looking up the matter and thought he knew who the parties were. He said to me he had information from the police, * * * and I read this letter which he had from Mr. DeWolf, and we then proceeded to the mayor's office.'' While waiting in the mayor's office they talked the matter over again, ''and he again alluded to the fact what the police had told him. I told him if these facts were true he had better make an affidavit for a search warrant.'' It is very evident that the case, as presented to the attorney, was upon a very different set of facts from the vague suspicion communicated to Russell by Metzger and Drulinger, and this suspicion, for aught that appears, based only on the light and movements in a house visited by sickness. The facts upon which the prosecuting attorney's advice was based were the letter from the company's attorney, the looking up of the matter by Russell, an employe, his belief that he knew who the parties were, and that he had information from the police. When, however, Russell himself came to testify, he had no such information, nor had the police given him any information; but on the vaguest and most unfounded suspicion the suggestions of the superserviceable watchman passed first to Russell, then to the agent, Truedly, from him and Russell to the attorney, DeWolf, and from DeWolf and Russell, still growing as they went, like the three black crows, until they finally came as a full fledged narrative to the prosecuting attorney. And then the officers, with the search warrant, start for Flora's house to find him away at work, and no tobacco concealed in any corner of the poor, but apparently honest, little household. It is

only when the facts within the knowledge of the prosecuting witness are fully and fairly stated to the attorney that his advice will be any protection. *Paddock* v. *Watts*, 116 Ind. 146.

The mere suspicion which was communicated to Russell was no justification for his affidavit. Even if he had believed Flora guilty, that would be no protection. It is only when there is reasonable and probable cause for instituting criminal proceedings that the prosecuting witness will be free from liability. *Graeter* v. *Williams*, 55 Ind. 461, and cases there cited.

It is contended, by counsel for appellees, that even if Russell should be liable in this case, yet the liability would not extend to the appellee company. The persons who procured the institution of the proceedings against Flora were all agents and employes of the company; and it would seem that each was acting within the scope of his employment and in the interests of the company. Truedly was the agent in charge of all the freight business of the company at Vincennes. Russell was under Truedly, and was check clerk of freight. De Wolf was the local attorney. It would appear that what was done by each of them in this matter was done in the interests of detecting the theft of the company's property; and that the search warrant was issued to discover and reclaim that property. It would, therefore, seem that the company would be liable as principal.

In *Evansville, etc., R. R. Co.* v. *McKee*, 99 Ind. 519, it was held 'that where a railroad company employs an agent to detect, arrest and prosecute persons who unlawfully obstruct its track, and the agent, acting in the scope of his employment, arrests an innocent person, the railroad company is liable therefor. See, also, Story Agency, section 452; *Philadelphia, etc., R. R. Co.* v. *Derby*, 55 U. S. 467; *Lynch* v. *Metropolitan, etc., R. W.*

*Co.,* 90 N. Y. 77; *Chicago, etc., R. R. Co.* v. *Flexman,* 103 Ill. 546; *Palmeri* v. *Manhattan R. W. Co.,* 133 N. Y. 261; *Dickson* v. *Waldron,* 135 Ind. 507; *American Express Co.* v. *Patterson,* 73 Ind. 430.

The majority of the court, however, are of opinion that it does not appear that, in instituting the proceedings for a search warrant, Russell was acting within the scope of his authority as agent of the company.

The judgment is therefore affirmed as to the Ohio and Mississippi Railway Company, and is reversed as to the appellee Russell, with instructions to overrule the demurrer to the evidence as to the said Russell, reinstate the verdict as to him, and render judgment thereon in favor of the appellant against the appellee Russell.

